UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 26-cv-11890-RGS

LISA MARIE PHIPPS

v.

WILLIAM E. SHAY, ESQ., ANTHONY J. BENEDETTI, ESQ., KEVIN T. LUCCHETTI, BENISE TORRACO, RENAY S. COSTA, ESQ., STEPHEN GUILLERM a/k/a IVY V. YARROW, JORGE R. AVILES, and LISA M. HEWITT, ESQ.

# MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

September 22, 2026

STEARNS, D.J.

Plaintiff Lisa Marie Phipps (Phipps) is a court reporter and transcriber. Defendants William E. Shay, Esq., Anthony J. Benedetti, Esq., Kevin T. Lucchetti, Denise Torraco, Renay S. Costa, Esq., Ivy V. Yarrow, Jorge R. Aviles, and Lisa M. Hewitt, Esq. (defendants) are employees of the Massachusetts Committee for Public Counsel Services (CPCS) — the state's public defender agency. The Complaint hinges on a dispute over the proper interpretation of a Massachusetts statute, Mass. Gen. Laws ch. 221, § 88, which sets out the reimbursement rates paid to court reporters for transcription services. Phipps alleges that defendants, individually, and in their official capacities, withheld at least $83,585 in unpaid fees owed to her

under her interpretation of the statute. Phipps further alleges that defendants retaliated against her after she challenged their failure to pay her at the proper rates, including initiating a retaliatory audit and suspending her from further transcription assignments, causing her a loss of wages of over $200,000.

**BACKGROUND**

The Massachusetts Trial Court's Office of Transcription Services (OTS) is a department under the Massachusetts Trial Court's Office of Court Management (OCM) and is responsible for overseeing the transcription of electronically recorded courtroom proceedings. OTS processes transcript requests from the court, clerks, the public, and the bar, including CPCS attorneys, and assigns them to Approved Court Transcribers (ACTs), like Phipps, to prepare. In agreeing to an assignment, an ACT executes a written contract with OCM specifying that the ACT's rates are paid according to Massachusetts General Laws ch. 221, § 88.

Phipps alleges that defendants repeatedly reduced or refused to pay her invoices for indigent appeal transcripts, contrary to the statutory transcription rate, her OCM contract, and court orders directing payment. Phipps's case turns on the proper interpretation of several state statutes and rules. First, Massachusetts General Laws ch. 221, § 88, establishes

transcription rates of $3 per page for the original and $1 per page for each additional copy ordered at the same time[1] (unless the requesting party is indigent, in which case the per-page rate for additional paper copies is reduced to $0.10). The statute separately provides for electronic reproductions to cost no more than $5 each. Second, Trial Court Administrative Order 19-1 requires electronic delivery to the clerk and all parties to an appeal and generally makes the appellant responsible for payment for the transcript copies. Third, M.R.A.P. 8(b)(1)(C) states that the Commonwealth shall pay for the cost of transcripts of proceedings relevant to an indigent party's appeal.

Phipps interprets these three provisions to collectively require payment at "original" and "additional" rates for the transcripts she produces, notwithstanding their electronic format. She argues that mandatory electronic transmission of the transcripts changed the delivery method without changing the rates; that the $0.10 rate applies only to additional paper copies; and that indigency shifts payment responsibility to the Commonwealth without reducing a court reporter's compensation.

[1] For expedited "daily copy," the rates are $4.50 and $1.50, respectively.

Phipps alleges that CPCS has been underpaying her since at least December of 2018, when she first complained to CPCS about the rates. After an exchange of emails, CPCS undertook an audit in August of 2021. During the audit, CPCS suspended Phipps's eligibility for new CPCS assignments. On January 31, 2022, Phipps received a letter summarizing the August 2021 audit, which characterized her billing practices as "deceptive if not fraudulent" and recommended that her suspension remain in place. Compl. ¶ 182. Phipps objected to the report's factual and legal conclusions, but its findings and recommendations were ultimately adopted by CPCS in an October 12, 2022 letter. The letter stated that Phipps could apply for reinstatement to become a CPCS vendor after 90 days. There is no indication in the Complaint that Phipps ever reapplied.

Phipps filed this Complaint on April 27, 2026. The Complaint alleges fourteen causes of action,[2] including seven claims for declaratory relief, a claim of federal constitutional violations pursuant to 42 U.S.C. § 1983, claims under the Massachusetts Civil Rights Act (Mass. Gen. Laws ch. 12, § 111), and the Massachusetts Consumer Protection Act (Mass. Gen. Laws ch. 93A), as well as claims for retaliation, intentional interference with contractual

[2] The Complaint mistakenly identifies two counts as "Count XI."

relations, intentional interference with advantageous relations, and civil conspiracy.[3] On June 15, 2026, defendants moved to dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted. Dkt. # 15.

## LEGAL STANDARD

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Ne. Erectors Ass'n of BTEA v. Sec'y of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995). "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993).

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Offering labels and conclusions will not suffice: A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*,

[3] The Complaint includes two vague references to 42 U.S.C. §§ 1985, 1986, and 1988, but does not assert any derivative claims under these statutes. *See* Compl. ¶¶ 23, 302.

quoting *Twombly*, 550 U.S. at 557. If the allegations in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint will be dismissed. *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

## DISCUSSION

### I. Rule 12(b)(1) Motion

Phipps names defendants in their individual capacities, except in those claims seeking prospective injunctive relief from any future violations of federal law. Compl. ¶ 38. Defendants argue that Phipps's damages claims are barred by the Eleventh Amendment because CPCS is the real party in interest. Defendants' argument in an important respect conflates official and personal-capacity suits. As the Supreme Court explained in *Hafer v. Melo*, 502 U.S. 21 (1991), "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 26; *see also Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 26 (1st Cir. 2007) ("If the [plaintiff] wishes to seek a personal judgment against [defendant] in a ruinous and probably uncollectible amount for actions that he took as the Commonwealth Treasurer to serve the interests of the Commonwealth, they

are entitled to do that."). Counts I, II, III, and VII request orders compelling payment of withheld compensation or income allegedly lost through the suspension. Compl. ¶¶ 241, 248, 255, 299. Insofar as these claimed losses replicate damages sought from defendants personally, sovereign immunity provides no basis for dismissal. State officials may be personally liable under § 1983 for actions undertaken through their official authority. But a plaintiff is barred from seeking orders directing defendants, through their official positions, to satisfy uncured liabilities from Commonwealth funds.

A separate limitation applies to a plaintiff's requests for orders directing defendants in their official capacity to conform their conduct to state law, whether that relief is retrospective or prospective. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."). Count I requests the court to declare defendants bound to pay the asserted statutory rates; Count IV seeks to prohibit changes to Phipps's OCM contractual relationship; Count VI seeks production of agency audit materials; and Count VII asks the court to declare defendants barred from disputing or reducing Phipps's invoices. Compl. ¶¶ 238, 273, 282-288,

296-300. Insofar as Phipps seeks these orders solely to enforce Massachusetts statutory, contractual, or administrative obligations, sovereign immunity bars that relief, notwithstanding her labeling of defendants' capacities. Absent a waiver, a federal court does not have the power to order state officials to conform their official conduct to state law. *See Urella v. Verizon New England, Inc.*, 682 F. Supp. 3d 134, 139 (D. Mass. 2023). On the other hand, to the extent Phipps seeks prospective relief to remedy an ongoing violation of federal law, the state-law limitation does not resolve those claims. That issue requires separate analysis.

## II. Rule 12(b)(6) Motion

At bottom, Phipps fails to state an actionable constitutional violation. Her withheld payments theory does not in the first instance constitute a violation of procedural due process (Counts I, II, IV, VII, and VIII). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Bos. Exec. Helicopters, LLC v. Maguire*, 196 F. Supp. 3d 134, 142–143 (D. Mass. 2016), citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). To sustain a due process claim based on the deprivation of a property interest, "[t]he plaintiff

must identify a legitimate claim of entitlement to the property in question . . . . For this purpose, an abstract need or desire or a unilateral expectation are not sufficient to cement a constitutionally protected interest." *Davis v. Coakley*, 802 F.3d 128, 134 (1st Cir. 2015) (internal citation omitted). Although the underlying property interest may be a creation of state law, whether that interest is sufficiently tangible to merit the status of an entitlement protected by the Due Process Clause is a question of federal constitutional law. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). Phipps has not alleged any vested right to payment at her preferred rate, but rather a "unilateral expectation" or "abstract need or desire" on her part based on her reading of the applicable state law. *Davis*, 802 F.3d at 134; *see also Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (distinguishing prior cases on the basis that respondent had not been denied any "present entitlement").

Moreover, "a procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists." *Charron v. Cnty. of York*, 49 F.4th 608, 621 n.15 (1st Cir. 2022), citing *Reid v. New Hampshire*, 56 F.3d 332, 341 (1st Cir. 1995); *see also Lujan*, 532 U.S. at 196 (assuming a protected property interest in a contractual payment claim but concluding that available state-court remedies supplied sufficient process).

Massachusetts provides a more than adequate forum for claims against the Commonwealth in Superior Court. *See* Mass. Gen. Laws ch. 258, § 12. Phipps alleges a binding contract with OCM and compensation obligations imposed by Massachusetts law but does not explain why a Massachusetts state court would be unable to adequately protect her asserted rights to the extent that the state court found them viable. Phipps alleges that there are (unspecified) "Massachusetts Court Orders directing [CPCS] to pay Plaintiff for indigent transcripts at the proper and higher statutory rate," but as she concedes, if defendants have disregarded these orders, there "would be grounds for [a] contempt [proceeding]" in the Superior Court. Compl. ¶¶ 88, 96.

Similarly, Phipps's suspension and audit theories in Counts III, V, VI, and VIII fail. The transcription rate statute addresses compensation for services; its payment provisions do not themselves establish a right to eligibility for future CPCS assignments. Although Phipps recites her official transcriber status and prior OCM contract, she fails to establish how these constrain defendants' authority to suspend her eligibility. *See Davis*, 802 F.3d at 134. Likewise, Phipps has not plausibly alleged constitutionally inadequate process to contest her allegations concerning the CPCS audit. Compl. ¶¶ 174-192.

For these reasons, the Complaint fails to state a claim under § 1983.[4]

## ORDER

With the dismissal of claims arising under federal law and the absence of any jurisdiction under § 1332, the court declines to exercise supplemental jurisdiction over the remaining state-law claims (Counts IX-XIII, and any surviving state-law components of Counts I-VII) under 28 U.S.C. § 1367(c)(3).[5] See *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) ("the balance of competing factors ordinarily will weigh strongly in favor of

---

[4] Phipps fails to recast these allegations under takings, equal protection, and substantive due process theories. *See Asociación De Subscripción Conjunta Del Seguro*, 484 F.3d at 27 (takings: "plaintiffs must point to credible sources for their claimed property interest . . . 'such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits'"), quoting *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 973 (1st Cir. 1993); *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (substantive due process: "the plaintiff must show *both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty, or property," – i.e., conduct that is "at the very least [ ] 'extreme and egregious,' or, put another way, 'truly outrageous, uncivilized, and intolerable'") (emphasis in original), quoting *DePoutot v. Raffaelly,* 424 F.3d 112, 118 (1st Cir. 2005); *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (equal protection: plaintiff must show she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"), quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

[5] Counts I-VII do not provide an independent basis for subject matter jurisdiction by requesting declaratory relief. *See Akins v. Penobscot Nation*, 130 F.3d 482, 490 n.9 (1st Cir. 1997) (the Declaratory Judgment Act does not "in itself, create[ ] a substantive cause of action").

declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation"). For the foregoing reasons, defendants' motion to dismiss is GRANTED.[6]

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

[6] In a concluding observation, the court notes that this dispute, involving as it does, a sensitive matter of a uniquely state interest, is particularly unsuited to intervention by a federal court. Even were there some tangible hook for an assertion of federal jurisdiction, this case would be a ripe candidate for abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (counseling district court judges involving themselves in cases raising difficult and complex questions of state law, the resolutions of which by a federal court might impede the orderly administration of a state regulatory system); *see also Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 75 (1st Cir. 2021) (Even applied "narrowly," *Burford* abstention is appropriate "where the federal court risks usurping the state's role as the 'regulatory decision-making center.'") (internal citation omitted).